UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:17-cr-00573-RWS |
| | ) |
| MITCHELL DAVIS, DC, | ) |
| | ) |
| Defendant. | ) |

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL

Comes now the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney, Eastern District of Missouri, and Dorothy L. McMurtry, Assistant United States Attorney for said district, and urges the Court to deny the "Defendant's Motion to Compel" (Doc. #22) because the Government has met and exceeded its discovery obligations, as defined by *Brady/Giglio,* the Jencks Act, and Fed. R. Crim. P. 16.

## BACKGROUND

On December 7, 2017, the defendant waived indictment and pled guilty to conspiring to commit bribery, in violation of 18 U.S.C. § 371, and making false statements relating to health care matters, in violation of 18 U.S.C. §1035. The sentencing hearing is presently scheduled for April 27, 2018.

On December 8, 2017, one day after the plea, the defendant requested discovery. Between December 8, 2017 and January 5, 2018, the parties exchanged a number of emails expressing their positions concerning what discovery materials should be disclosed and the timing of the disclosure.

On December 15, 2017, the Government sent, by FedEx Express, a large volume of discovery to the defendant. In his motion at page 5, the defendant acknowledges that he received discovery, including "over 4,500 recorded and un-transcribed conversations." Also included in the production were two Title III affidavits; an affidavit for the search of a cell telephone of co-conspirator Terri Owens, toll records for the personal telephone of co-conspirator Galina Davis; photos of co-conspirators Marlon Caldwell, Mark Taylor, and Galina Davis; and FBI interview summaries of the defendant, Galina Davis, Cauncenet Brown, Mark Taylor, and Marlon Caldwell.

In an email dated January 5, 2018, the Government identified other discovery materials in its possession, including: (1) claim files prepared by the defendant that the Government subpoenaed from numerous insurance companies; (2) bank records subpoenaed from the banks; and (3) documents subpoenaed from the defendant. The Government has not refused to disclose the above-described documents, although the defendant in all likelihood already has these documents in his possession or control.

The Government has refused to disclose summaries that federal agents prepared following their interviews of defendant's patients and employees. In emails dated January 2 and January 5, 2018, the Government informed the defendant that it would not disclose the interview summaries because neither Fed. R. Crim. P. 16, the Jencks Act (18 U.S.C. §3500), nor *Brady* mandate the disclosure of the interview summaries. It is this issue that is before the Court in the pending motion.

**ARGUMENT**

***Brady/Giglio* Information**

The Government recognizes its obligation to disclose *Brady/Giglio* information that is material to guilt and punishment. The Government has and will continue to comply with the requirements of *Brady/Giglio*.

The Government has refused to disclose interview summaries of the defendant's employees, including chiropractors, and patients because the summaries do not contain *Brady* or *Giglio* information. To the contrary, the statements corroborate the allegations against the defendant.

The defendant speculates that there is *Brady* information in the interview summaries of chiropractors because Dr. David McNamara, a chiropractor formerly employed by the defendant, stated that he told the FBI that the:

> treatment I observed patients receive at City Health is consistent with the treatment I have observed patients receive at other chiropractic clinics. I observed nothing unusual about the clinic's operations and treatment of patients . . . patients provided subjective pain levels at various intervals during their treatment plan. The purpose of the pain levels was to internally track the patient's progress.

Dr. McNamara's conclusory statements are not exculpatory because Dr. McNamara does not provide any specific information about, nor even address, the acts that were the subject of the Government's investigation and prosecution. Further, Dr. McNamara does not indicate that he observed or otherwise knew what the defendant said and did when he met and talked to patients, which is the linchpin of the Government's prosecution and the defendant's plea to Count 2.

A second chiropractor also made a general statement to federal agents about the defendant. This chiropractor stated that he or she had no reason to believe that the defendant and his clinic were billing for non-rendered services. However, this chiropractor also stated that he

3

or she never observed the services provided by the chiropractic assistants or the defendant's interaction with patients during the intake visits.

The defendant admitted in his plea agreement that he (1) "exaggerated the pain level of his patients . . ."; (2) "encouraged some patients to say that their pain level was 8 or 9 . . . [and] told these patients that the higher pain level was necessary because a pain level of 4 or 5 would result in a lower settlement amount'; and (3) "entered a pain level in the patient records that was higher than the patients actually reported." Guilty Plea Agreement, p 27-8, ¶¶ yy, zz; see also ¶¶ aaa, ccc, and iii.

Neither Dr. McNamara nor the second chiropractor provide any information concerning the criminal acts which the defendant admitted. Nor do the two chiropractors offer any explanation for the criminal acts, mitigating factors, or any other information favorable to the defendant. Therefore, the interview summaries are not discoverable as *Brady* material.

Further, prior to the defendant's plea, he repeatedly represented to the Government that he had affidavits from numerous chiropractors. These chiropractors allegedly stated that neither they nor the defendant had engaged in any wrongdoing. Therefore, to the extent the defendant believes the chiropractors' statements are material to the issue of punishment, he may present this evidence at the sentencing hearing.

The defendant next argues that there is likely *Brady* information in the interview summaries of patients because one patient, S.Z., told the defendant's investigator that she was in "a lot of pain" and the defendant did not provide enough treatment. This statement is not exculpatory; nor does S.Z.'s statement concerning pain "contradict the version of events provided by the Government," as asserted by the defendant. The Government's "version of events" is based on the defendant's recorded words, set out on pages 27-30 of his plea

4

agreement.  The defendant stipulated that S.Z. "kept insisting that he was not in pain [and] finally gave in and agreed that his pain level was between 6 and 8," only after the defendant encouraged him to do so.

At no time during this investigation and prosecution has the Government taken the position that none of the defendant's patients was experiencing pain.  Rather, the Government has asserted, and has proved, that the defendant fraudulently exaggerated his patients' level of pain to justify his services to them and to increase his revenue.  Therefore, S.Z.'s purported statement concerning pain is not contrary to the elements or facts the Government had to prove.

**Fed. R. Crim. P. 16 Discovery**

The Government has agreed to provide all discovery that it would have had to provide, if the defendant had been indicted and had requested Rule 16 discovery after indictment.  By so doing, the Government does not concede that Rule 16 is applicable to a discovery request made after a waiver of indictment and plea.  However, the Court need not decide this issue in that the Government is agreeing in this case to provide discovery as required by Rule 16(a)(1)(E).

Relying on Rule 16(a)(2), the Government has refused to disclose interview summaries of witnesses or other internal government documents.  Rule 16(a)(2) expressly states that Rule 16(a)(1)(E) "does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with the investigating or prosecuting the case.  Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500."

The Government also will not disclose statements, if any, made by the defendant's employees to the grand jury.  Rule 16(a)(3) provides that Rule 16 "does not apply to the

5

discovery or inspection of a grand jury's recorded proceedings, except as provided in Rules 6, 12(h), 16(a)(1), and 26.2." As required by the Jencks Act, the Government will disclose the grand jury testimony of a witness, whom the Government calls to testify at the sentencing hearing.

**Jencks Act Statements**

The Government is not required, and will not, disclose Jencks statements, except as provided by the Jencks Act, which provides in relevant part:

> **a)** In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.
> **(b)** After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified. If the entire contents of any such statement relate to the subject matter of the testimony of the witness, the court shall order it to be delivered directly to the defendant for his examination and use.

18 U.S.C. § 3500. Although in many cases the Government freely discloses Jencks Act material to the defense in advance of trial, "the Government may not be compelled to do so." *United States v. White*, 750 F.2d 726, 729 (8th Cir. 1994). "A court has no power to compel the disclosure of such material prior to trial." *United States v. Avelino*, 129 F. Supp. 2d 214, 218 (E.D. 2001), citing *United States v. Percevault*, 490 F.2d 126, 131-32 (2d Cir 1974).

The aim of the Jencks Act is to restrict the use of Jencks statements to impeachment. *Palermo v. United States,* 360 U.S. 343, 349 (1959). The Jencks Act protects the Government's files from unwarranted disclosure and at the same time gives defendants access to witness statements usable for impeachment purposes. *See United States v. Smaldone,* 544 F.2d 456, 460 (10th Cir. 1976), *cert. denied,* 430 U.S. 967 (1977).

6

The Government will disclose Jencks statements the Friday before the sentencing hearing if the defendant will agree to do the same. At present, the Government has not identified any witnesses who will testify at the sentencing hearing and no decision has been made as to whether the Government will offer evidence at the sentencing hearing.

**Government Discovery Policy**

In support of his motion, the defendant cites provisions of the U.S. Attorney's Manual (USAM) and the Policy Manual of the United States Attorney's Office for the Eastern District of Missouri (USAO Policy) concerning the disclosure of *Brady* and *Giglio* material. However, the defendant fails to note that the USAM contains the following statement:

> The Manual provides only internal Department of Justice guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal. Nor are any limitations hereby placed on otherwise lawful litigative prerogatives of the Department of Justice.

Similarly, the USAO Policy states that the discovery policy does not "create or confer any rights, privileges, or benefits on any person." Consequently, neither the USAM nor the USAO Policy create any legal rights to discovery, except as defined by Rule 16, the Jencks Act, and *Brady/Giglio*.

Nonetheless, the Government has complied with the USAM and USAO discovery policies. As stated above, the Government has disclosed search warrant affidavits detailing the Government's investigation and some interview summaries not subject to disclosure absent *Brady/Giglio* material and has agreed to disclose Jencks statements the Friday before the sentencing hearing if the defendant agrees to do the same.

**<u>Government's Alleged Promise to Provide Discovery</u>**

The defendant urges this Court to compel the Government to produce interview summaries because the Government purportedly promised to disclose a "large volume" of discovery and is now refusing to do so. This argument is not based in fact.

The Government agreed to disclose a large volume of discovery to the defendant. On December 15, 2017, the Government disclosed a large volume of discovery to the defendant. On January 5, 2018, the Government identified a large volume of additional documents that it was willing to disclose.

However, contrary to the defendant's repeated assertions, the Government never promised to disclose interview summaries to him. It is very telling that the defendant identified and quoted from a number of emails from the Government, but did not identify any document or conversation wherein the Government made such a promise. Instead, the defendant makes the convoluted and far-fetched argument that the Government's disclosure of some interview summaries in December 2017 and the Government's use of the word "large" to describe the volume of documents constitutes a promise by the Government to disclose interview summaries.

There is no promise for the Court to enforce and the defendant's argument should be rejected.

**Conclusion**

  For the reasons discussed above, the Government respectfully urges the Court to deny the defendant's motion to compel.

                Respectfully submitted,

                JEFFREY B. JENSEN
                United States Attorney

                */s/ Dorothy L. McMurtry*
                DOROTHY L. McMURTRY #37727MO
                Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on January 22, 2018, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

                                        */s/ Dorothy L. McMurtry*
                                        DOROTHY L. McMURTRY, #37727MO
                                        Assistant United States Attorney