# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>   Plaintiff, )<br>)<br>v. )<br>)<br>MITCHELL DAVIS, DC, )<br>)<br>   Defendant. | Case No. 4:17-cr-00573 |

## DEFENDANT'S REPLY IN SUPPORT OF MOTION TO COMPEL

Comes now Defendant Mitchell Davis ("Dr. Davis") by and through his attorneys and submits the following Reply in support of his Motion to Compel (the "Motion"). Despite the government's claims, it has not met, let alone "exceeded," its discovery obligations in this matter. Indeed, the government's Response to the Motion (the "Response") refuses to engage with some of the central arguments in Dr. Davis's Motion, choosing instead to concentrate on the red herring of interview reports. In short, the government's Response ignores such crucial issues as:

- why the Count 2 discovery has become undiscoverable since December, aside from the "urgency" in which Dr. Davis has requested it;

- the fact that the Plea Agreement is plainly not the entire universe the Court should consider in evaluating the 3553(a) factors;

- the fact that the same materials that the government objects to the production of for Count 2, including interview reports, were already produced for Count 1; and

- the lack of any "government harm" that can be alleged from the disclosure of the Count 2 discovery

## I. ARGUMENT

**A.  The Government has Wrongly Conflated the Two Sets of Promised Discovery**

Rather than engaging the above-mentioned critical issues, the government's Response strategy was, in part, to conflate the two sets of promised discovery, each relating to one of the

two counts in the Information. The government's own words, however, undermine its claims in the Response.

For instance, the government attempts to conflate the December 15, 2017, discovery, which dealt with the conspiracy to commit bribery charge in Count 1 (*see* Motion at 2-3) with the "large volume" of discovery that it promised, relating to Count 2, false statements relating to health care matters. *See* Response at 2 ("On December 15, 2017, the Government sent, by FedEx Express, a *large volume of discovery* to the defendant.") (emphasis added). However, the government previously described its planned productions as follows:

> We are preparing a discovery disk for the defendants, who have not pled yet [the Count 1 discovery, sent on December 15, 2017]. The disk will contain some of the discovery in this case, but *a large volume of discovery will not be contained on the disk*. As to the latter, we will make it available to you, at a time convenient for both parties, for your inspection and copying[], at your expense.

*See* Exhibit 1 to Motion at 3, Dec. 8, 2017 email from D. McMurtry to S. Doran et al. (emphasis added). Thus, the government's decision to now refer to the Count 1 discovery as the "large volume" is in direct contradiction of its original description of the outstanding Count 2 discovery as the "large volume," and appears to be nothing but an attempt to comingle the largely separate discovery for each count and to muddy the waters for Dr. Davis and the Court.

Indeed, the discovery for "the defendants[] who have not pled yet" logically contained material related to the conspiracy to commit bribery charge, for that is what they are charged with. Similarly, it did not contain material relevant to Count 2, as the remaining defendants—all St. Louis Metropolitan Police Department ("SLMPD") Officers— were not charged with health care false statements.

As noted in the Motion, the Count 1 discovery contained thousands of recorded and un-transcribed phone calls, some of which related to the conspiracy to commit bribery charge; it did not, however, contain recordings of any of the numerous in-person conversations between Dr.

2

Davis and undercover sources that the government recorded, which would be relevant to Count 2 and which the government now seeks to withhold. For example, the recorded calls between Galina Davis and the SLMPD officers Caldwell, Taylor, Brown, etc, would clearly relate to Count 1, and they have been produced. On the other hand, the conversations between Dr. Davis and undercover sources would relate to Count 2, and they have *not* been produced.

Further, the government has offered several other categories of material contained in what it originally described as the "large volume" of Count 2 discovery (though it now seeks to conflate that term with the Count 1 discovery). It has not, however, clarified if that is the entirety of the material in that large volume of Count 2 discovery, and Dr. Davis is still unsure of what is contained in the "large volume" of discovery that was promised. What is clear, though, is that the Count 2 discovery is <u>*not*</u> made up exclusively of interview reports, though that is the primary focus of the government in its Response.

Indeed, if the only outstanding material was the interview reports, why did the government not clarify that following one of Dr. Davis's many requests for information about what the Count 2 discovery is composed of? For the government to assure the defendant it would produce discovery—then withdraw that offer because defense counsel moved (as the government put it, "urgently") to accept that offer and facilitate the production—is inequitable and seems merely punitive. The Court should not allow the government to engage in discovery-by-whim or withhold discovery as a punishment.

**B.    The Government's "Reconsideration" on Producing the Count 2 Discovery is Illogical**

Furthermore, the government has ignored the elephant in the room: ***why is the Count 2 material now undiscoverable, if the government was prepared in December to produce it?*** The only answer available is that the government did not like the fact that Dr. Davis actively sought the production of that discovery. It is telling that the government has chosen to ignore this central

3

question, raised clearly and repeatedly in the Motion. *See, e.g.,* Motion at 2-3 ("The government replied on January 5, 2018, stating that it would not be producing the material it had previously offered; although the government now claimed such material was protected from discovery, it begs the question as to why the government offered to produce it to Dr. Davis in the first place. That is, if the material is not discoverable this month, why was it discoverable last month?") (citations omitted) Such failure to address a central question is evidence that the government is now attempting to justify an arbitrary decision made for punitive purposes.

The government avoids this question because it cannot face the answer: the government admitted in its January 2, 2018, email that it was Dr. Davis's request for the discovery that caused the government to reconsider its willingness to produce it. *See* Exhibit 3 to Motion, Jan. 2, 2018 email from D. McMurtry to G. Saikin. This is evidence of the government arbitrarily changing its mind, without any basis in the law.

A corollary question that the government ignores in its Response is ***why the Count 2 material is not discoverable if similar material applicable to Count 1 was discoverable?*** By way of example, why are the recordings of calls related to the bribery allegations—which have been produced—discoverable, yet the recordings of undercover sources relevant to the health care offense not discoverable? Again, the only answer is that the government is acting in an arbitrary manner for what it perceives to be his aggressive attempts to secure the offered discovery.

The government's Response is also notably silent with respect to its incredible statement that the Court does not need any information beyond the Plea Agreement to assess the 3553(a) factors. *See* Motion at 5-6. Presumably, the government stands by this statement, which is in stark contrast to what the law provides, and a worrying indicator of what the government believes Dr. Davis is entitled to in discovery.

C.  **The Government's Remaining Objections to Produce the Count 2 Discovery Must Likewise Be Rejected**

1.  *Brady/Giglio* **Information**

The government makes the remarkable claim that a statement by a former employee of Dr. Davis's relating to pain is not relevant to a count focused on Dr. Davis's use of pain levels. The government alleges that the exculpatory material cited by Dr. Davis does not meet its desired level of specificity, but cites *no cases* to support the newly-created specificity test that the government seeks to apply.

The government also concedes that it is obliged to provide discovery that is material not just to guilt or innocence, but to the appropriate sentence. Response to Motion at 3 ("The Government recognizes its obligation to disclose *Brady/Giglio* information that is material to guilt and punishment."). However, the government appears to discount that, while Dr. Davis's general use of pain levels may not bear on his guilt or innocence in the one specific instance charged in the Information and admitted to in the Plea Agreement, it certainly bears on punishment, and the Court should consider how frequently or severely Dr. Davis engaged in wrongful conduct. That is, while his general practice may not be material to what he did with patient R.B., it is certainly relevant to whether Dr. Davis's wrongdoing was occasional or endemic. It is noteworthy that the government cannot see that although statements that cast Dr. Davis's conduct in a good light may not be material to *guilt or innocence*, they may well be material to *punishment*. This suggests that the government has not and cannot impartially determine what material is relevant for sentencing under *Brady*.[1]

---

[1] Similarly, the government appears to have decided that none of the material related to patient S.Z. is exculpatory because it is not "contrary to the elements or the facts the Government had to prove." Response to Motion at 5. Again, ***this is not the appropriate test under Brady***. *Brady v. Maryland*, 373 U.S. 83, 87 (1963) (holding that all evidence favorable to an accused, whether material either to guilt or punishment, must be supplied to the defendant). Dr. Davis

5

### 2. Rule 16 Discovery

The government agrees to provide the discovery that Dr. Davis is entitled to under Rule 16, but focuses its Response on just a few categories of this discovery. The first category is the interview reports, which, as discussed above, were produced with respect to Count 1 and are being withheld—without logical reason—for Count 2. This gap has yet to be explained by the government. Second, the government's Response oddly notes that Rule 16 protects grand jury material from disclosure. This is undisputed, and Dr. Davis has not sought the production of grand jury materials.

Rule 16, however, authorizes the production of "books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control" material to the defense, used by the government in its case, or taken from the Defendant. Fed. R. Crim. P. 16(a)(1)(E). In this case, that goes far beyond the interview statements, and includes materials taken from Dr. Davis during the December 1, 2016 execution of a search warrant, and other discovery that may be material to the defense. Thus, while the interview reports are *part* of the Count 2 discovery, they are not the *entirety* of it, and the attempt by the government to shift the focus to just those reports is misleading.

### 3. Jencks Act Statements

Similarly, Dr. Davis has not sought Jencks Act material, though the government had not previously clarified whether such materials were part of the Count 2 discovery.

### 4. Government's Discovery Policy

Dr. Davis recognizes that the U.S. Attorney's Manual and the Discovery Policy of the

---

is concerned by the fact that the government appears willing to substitute tests of its own creation in place of that set out by the Supreme Court.

6

United States Attorney's Office for the Eastern District of Missouri ("USAO") do not confer legal rights. They do, however, offer guidance and instruction on what discovery is available to a defendant and set the standard for reasonableness. In this case, the government has merely stated that, by producing Count 1 discovery, but not Count 2 discovery, it has complied with the policy of "expansive discovery." This is a bizarre claim; the assertion that the government has provided Dr. Davis with such expansive discovery simply does not square with its contemporaneous arguments that Dr. Davis is not entitled to the discovery that it previously promised him.

5. **Government's Documented Promise to Provide the Count 2 Discovery**

The government further attempts to muddy the waters; reiterating its mischaracterization that the Count 1 discovery produced on December 15, 2017 is the "large volume" of discovery related to Count 2 that it promised to produce. As the government's email cited above and as Exhibit 1 to the Motion demonstrates, this is inaccurate, and nothing but an attempt to conflate the two sets of promised discovery, only one of which was delivered.

Notably, the government's suggestion that the production of the Count 2 discovery would result in some type of governmental harm is nowhere to be found in the Response. *See* Exhibit 3 to Motion, Jan. 2, 2018 email from D. McMurtry to G. Saikin et al. (noting that it "will disclose any additional information it is required to disclose or which can be released without harm to the government's interests"). The government has offered no reason why it did not follow the U.S. Attorney's Manual and the USAO Discovery Policy in this case. The reason for this is clear; the claim of potential government harm was merely a pretext for withholding discovery from the Defendant. And although the government appears to dislike Dr. Davis's "urgency" in seeking discovery, this is not a valid basis for depriving Dr. Davis of materials which he was promised and to which he is entitled. Neither *Brady*, nor Rule 16, nor the governing policies entitle the government to withhold discovery because the defendant's request were deemed too "urgent" by

7

the prosecutor, and a defendant's urgency is wholly irrelevant to the issue of what discovery he is entitled to.

### III.     CONCLUSION

Each of the government's justifications for withholding the discovery is baseless and appears, based on the circumstances discussed above and in Dr. Davis's Motion, to be pre-textual. Rather, the government's withholding of the Count 2, "large volume of discovery" is an arbitrary and capricious response to Dr. Davis's attempts to obtain the promised discovery.

WHEREFORE, Dr. Davis respectfully requests that the Court order the government to produce the discovery it has promised, along with all other relevant materials pursuant to *Brady*, Rule 16, and the governing policies.

Respectfully submitted,

*/s/ Samuel E. Doran*
Gregory S. Saikin
Texas Bar No. 24051281
EDMO Bar No. 24051281 *(pro hac vice)*
Samuel E. Doran
Texas Bar No. 24095762
EDMO Bar No. 24095762 *(pro hac vice)*
BAKER & HOSTETLER LLP
811 Main Street, Suite 1100
Houston, TX 77002-6111
Telephone:  713.751.1600
Facsimile:  713.751.1717

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 23, 2018, the foregoing document was filed electronically via the Court's electronic filing system and served upon all counsel of record by means of the Court's Notice of Electronic Filing pursuant to Local Rule 5 - 2.12.

*/s/ Samuel E. Doran*